IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| RINCON ISLAND LIMITED PARTNERSHIP | § § § § | Case No. 16-33174 (HDH) |
| Debtor. | § | |

DECLARATION OF RICHARD S. SCHMIDT
IN SUPPORT OF MOTION TO ALLOW USE OF CASH COLLATERAL AND
APPROVAL OF DIP FINANCING

I, Richard S. Schmidt, hereby declare:

1. I have been retained by Rincon Island Limited Partnership, debtor in possession (the "Debtor" or the "Company"), subject to court approval, as a consultant to assist the Debtor with the negotiation of debtor-in-possession financing (the "DIP Financing"). In this capacity, through discussions with counsel for the Debtor, discussions with the DIP Lender's counsel, discussions with UBS's counsel, a review of the debtor's budget, and a limited review of debtor's assets and a valuation thereof, I have become generally familiar with the Debtor's business and its need for the DIP Financing.

2. On August 8, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Court"). The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

DECLARATION OF RICHARD S. SCHMIDT IN SUPPORT OF MOTION
TO ALLOW USE OF CASH COLLATERAL AND APPROVAL OF DIP FINANCING

HOU:3714393.1

3. I submit this declaration (this "Declaration") to support the Debtor's Emergency Motion for Interim Approval of Debtor-in-Possession financing (the "Motion"). Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my review of relevant documents, information supplied to me by members of the Debtors' management team and advisors, or my opinion based on my experience, knowledge, and information concerning the Debtor's operations and financial condition. I am authorized to submit this Declaration on behalf of the Debtor and, if called upon to testify, I could and would testify competently to the facts set forth herein.

### Events Leading to these Chapter 11 Cases.

4. The Debtor is engaged in business of oil and gas exploration in Ventura County, California. Its principal assets are three oil and gas leases with the California State Lands Commission ("SLC"). Prior to the filing of the chapter 11 petition a meeting was scheduled to be held with the SLC whereby the SLC intended to terminate the Debtor's oil and gas leases. The Debtor's believe that the attempted termination was without cause and unlawful. The chapter 11 petition was filed by the Debtor to prevent the attempted termination of the SLC leases.

### Need for DIP Financing

5. The Debtor's SLC leases currently are not producing oil or gas. The Debtor seeks approval of the DIP loan so that it can have the funds to allow it to maintain the leases and perform the necessary work on the leases so that production can be restored. The required work also is necessary to maintain the safe operation of the Debtor's properties, both from an

environmental and public safety perspective. In my opinion, the Debtor's agreement to the terms of the DIP Financing is a reasonable exercise of the Debtor's business judgment.

6. I have had contact with numerous entities that are known to provide DIP financing to debtors. Based on my conversations and communications with such entities I have been unable to obtain a commitment from such entities to provide DIP financing on terms more favorable than the terms of the DIP Financing.

7. Currently, the Debtors have only approximately $14,000.00 in an account at Citibank. I understand that UBS claims to have a lien on such cash and a first-priority lien on all of the Debtor's oil and gas properties.

8. The DIP Facility provides that GIT, Inc., an affiliate of the Debtor, will provide up to $10 million in financing to the Debtor. The Debtor seeks authority to borrow $250,000.00 on an interim basis.

9. Any draws on the DIP Facility will be advanced on a superpriority administrative claim basis and be secured by, subject to a carve-out, a perfected third-priority security interest on all prepetition and postpetition collateral of the Debtor. The DIP Liens will be subordinate to the liens of UBS and GLR, LLC. Additionally, as adequate protection for the use of cash collateral, replacement liens and a superpriority administrative expense claim will be provided for any diminution in value of UBS's collateral. The other terms of the proposed DIP Facility are set forth in the proposed DIP Order filed with the Motion.

10. Each of the foregoing factors, among others, contributed to the Company's decision to seek relief under chapter 11 of the Bankruptcy Code. The Company intends to

**DECLARATION OF RICHARD S. SCHMIDT IN SUPPORT OF MOTION**
**TO ALLOW USE OF CASH COLLATERAL AND APPROVAL OF DIP FINANCING**

HOU:3714393.1

restructure its debts and reorganize its business to provide the greatest possible recovery for the estate and stakeholders.

## I. Evidentiary Support for the Motion.

11. As discussed above, the Company has entered into chapter 11 with the goal of preserving the value of its SLC leases and restructuring its debts to maximize value for all of its stakeholders.

12. The Company requests authority to use Cash Collateral on an interim basis and incur post-petition debtor-in-possession financing and use Cash Collateral on a final basis on the terms set forth in the Motion. I believe the use of Cash Collateral on an interim and final basis and approval of DIP Financing is vital to the Company's continued operations and the preservation of value for all creditors and parties in interest. The Motion and the exhibits attached thereto contain a description of the key terms of the use of Cash Collateral and DIP Financing. I hereby adopt and incorporate the description from the Motion as if fully set forth herein.

13. Specifically, the Company requests entry of an interim order authorizing the Company to immediately use cash collateral to avoid immediate and irreparable harm. Absent immediate use of Cash Collateral and approval of the DIP Financing the Company will not be able to pay its employees or fund operating and maintenance expenses, putting its operations and assets at substantial risk. Additionally, if the funds are not provided the public safety and the environment could be negatively impacted.

14. The DIP Financing will be used to fund the Company's ongoing operating and maintenance expenses and the administrative expenses of the bankruptcy cases as the Company

**DECLARATION OF RICHARD S. SCHMIDT IN SUPPORT OF MOTION
TO ALLOW USE OF CASH COLLATERAL AND APPROVAL OF DIP FINANCING**

pursues the restructuring efforts. I believe that the relief requested in the DIP Motion, including the immediate use of Cash Collateral, is in the best interests of the Company's estates, its creditors, and all other parties in interest, and will enable the Company to continue to operate its businesses in chapter 11 with the least amount of disruption possible. Accordingly, on behalf of the Company, I respectfully submit that the Motion should be approved.

*[Remainder of Page Intentionally Left Blank]*

**DECLARATION OF RICHARD S. SCHMIDT IN SUPPORT OF MOTION**
<u>**TO ALLOW USE OF CASH COLLATERAL AND APPROVAL OF DIP FINANCING**</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 25, 2016
Houston, Texas

_____
Richard S. Schmidt

**DECLARATION OF RICHARD S. SCHMIDT IN SUPPORT OF MOTION**
**TO ALLOW USE OF CASH COLLATERAL AND APPROVAL OF DIP FINANCING**